IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY KOSEK, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ETHICON, INC. and JOHNSON & ) <br> JOHNSON, ) <br> ) <br> Defendants. ) <br> ) | No. 18 C 7477 <br><br> Magistrate Judge <br> Maria Valdez |

### MEMORANDUM OPINION & ORDER

This matter is before the Court on Defendants' Motion for Protective Order [Doc. No. 87]. For the reasons that follow, the motion is granted in part and denied in part.

### BACKGROUND

Plaintiff's complaint alleges negligence and strict liability with respect to an allegedly defective pelvic mesh device, the TVT-O, which Plaintiff had implanted in 2009 and subsequently removed in July 2018. An MDL related to pelvic mesh products was formed against Defendants in the Southern District of West Virginia in 2012 and stopped accepting cases for transfer in June 2018. There is also a multicounty litigation (MCL) proceeding in New Jersey state court. Although Plaintiff's counsel had experience with the MDL, the present case was not part of it. A document repository is still maintained, and documents have been added to it since the MDL closed. The parties agreed to streamline discovery in light of the

MDL discovery already completed,[1] but Plaintiff discussed her need for additional discovery in a February 10, 2020 hearing before the District Judge. Plaintiff's counsel argued that the MDL discovery was inadequate to explore an important issue in her case, namely Defendants' reliance on a medical society's position statement that the TVT-O was the gold standard. According to Plaintiff, the changing landscape in the past five years, including the FDA's changed position, attorney general investigations, market withdrawals of other pelvic mesh products, and the completion of various lawsuits, warranted more discovery than could be found in the repository.

After describing the MDL's history and this case, Plaintiff's counsel agreed with the District Judge's statement that "the point of this discovery is you want to narrow down, I hope, the number of corporate representatives that you're going to have to take?" (2/10/20 Hr'g Tr. at 8:22-24.) The District Judge advised Plaintiff "there's been so much discovery" already in the MDL proceeding and Plaintiff should "narrow" the discovery material she includes in her filings and not submit "9,000 pages of transcripts." (*Id.* at 18:6-15.) The District Judge went on to state that "we're going to have to update some discovery . . . because that's the nature of new litigation." (*Id.* at 25:3-11.) The District Judge ultimately allowed Plaintiff to

---

[1] In a July 17, 2019 Order Regarding Discovery in Non-MDL Federal Court Cases, the MDL judge stated that "[t]he purpose of this Order is to provide judges in individual federal courts who may be presiding over pelvic mesh cases with an understanding of the extensive discovery that has been conducted in the MDL over the last several years with the expectation that it will assist such judges in preventing duplicative discovery going forward and facilitate efficiency in the discovery process." (10/10/19 Joint Planning Report, Ex. A, at 1.)

serve new discovery requests, "geared toward determining the corporate depositions needed." (Doc. No. 50.) Plaintiff filed a motion to compel related to Defendants' responses, which this Court denied. Defendants then filed the present motion, seeking to prevent Plaintiff from taking a Rule 30(b)(6) deposition and twelve fact witness depositions.

## DISCUSSION

Federal Rule of Civil Procedure 26(c)(1) provides that, if good cause exists, a court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The district court has "broad discretion to decide when a protective order is appropriate and what degree of protection is required." *Sonrai Sys., LLC v. Romano*, No. 16 CV 3371, 2020 WL 3960441, at *1 (N.D. Ill. July 13, 2020) (citation omitted); *see also In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 (N.D. Ill. 2005) ("District courts enjoy extremely broad discretion in controlling discovery."). As the party seeking the protective order, Defendants have the burden of showing good cause for its entry. *See ED&F Capital Markets Ltd. v. JVMC Holdings Corp.*, 335 F.R.D. 174, 177 (N.D. Ill. 2020); *City of Rockford v. Mallinckrodt Ard, Inc.*, Case No. 17 CV 50107, Case No. 20 CV 50056, 2020 WL 1675593, at *2 (N.D. Ill. Apr. 26, 2020) (citation omitted). "Before restricting discovery, the court should consider 'the totality of the circumstances, weighing the value of the materials sought against the burden of providing it,' and taking into account society's interest in furthering 'the

3

truthseeking function' in the particular case before the court." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (citation omitted).

Plaintiff seeks to take a Rule 30(b)(6) deposition of an Ethicon corporate witness on fourteen topics, as well as thirteen additional fact witness depositions of mostly current and former Ethicon employees. Defendants do not oppose one of the requested depositions—of Christen Esau, the sales representative at the facility where Plaintiff was implanted with the pelvic mesh product—but oppose the other twelve fact witness depositions and the Rule 30(b)(6) corporate deposition.

The Court will grant Defendants' motion as to ten fact witnesses who already gave deposition testimony in the MDL and as to topics 1, 4, 5, 7, 9, 10, 11, and 14 of the Rule 30(b)(6) deposition, but will deny Defendants' motion as to the depositions of Frank Calabrese and Michelle Garrison and topics 2, 3, 6, 8, 12, and 13 of the Rule 30(b)(6) deposition, as set forth below.

### A.     **Fact Witness Depositions**

Of the twelve fact witnesses at issue here,[2] ten have already given deposition testimony in the MDL and Plaintiff has access to the deposition transcripts. Plaintiff argues that Defendants "apply an incorrect legal standard" in their motion by citing cases involving MDL discovery and emphasizes that Rule 26 still applies in MDL cases. (Doc. No. 91 at 10.) Rule 26 obviously does apply, but there is room in

---

[2] There are thirteen total fact witnesses mentioned in the parties' briefing: Laura Angelini, Aaron Kikemo, Dan Smith, Meng Chen, David Robinson, Martin Weisberg, Piet Hinoul, Axel Arnaud, Charles Nager, Paul Parisi, Michelle Garrison, Frank Calabrese, and Christen Esau. However, as stated above, Defendants do not oppose Christen Esau's deposition.

4

the Rule 26 analysis for consideration of the fact that MDL depositions have already occurred and, thus, the burden of re-doing the depositions may be "undue" and outweigh the usefulness of the information. *See* Fed. R. Civ. 26(c). Also, in the context of cumulative MDL discovery, some courts demand that the party seeking discovery make "a strong ca[]se" before the court allows "a deposition that could have been taken in the MDL or to re-take one already taken." *In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig.*, CAUSE NO. 3:12-MD-2391, 2018 WL 7683307, at *5-6 (N.D. Ind. Sept. 6, 2018) (alteration in original).

Plaintiff does not contest that ten of the relevant fact witnesses were already deposed in the MDL. Plaintiff makes two arguments in favor of re-deposing those witnesses: (1) re-depositions are required to address "damming [sic] facts . . . and developments" that occurred after the MDL depositions; and (2) the "general liability" depositions taken in the MDL, which related to many different products in addition to the TVT-O, are insufficient because Plaintiff will have to sort through the testimony to find the testimony related specifically to the TVT-O. (Doc. No. 91 at 4.)

Plaintiff does not specify which of the witnesses would testify to which "new" facts, why they did not or could not have testified to those facts in the MDL, or even what each witness's role was at Ethicon. Plaintiff responds to Defendants' assertion that each witness was already exhaustively deposed in the MDL by making general assertions as to all ten witnesses with no regard to what new information each witness might *individually* be able to testify to. Without any showing of the new

5

information each witness would testify to, the Court will not allow re-depositions.[3] *See, e.g., In re Fosamax Prods. Liab. Litig.*, No. 06 Civ. 6292 (JFL), 2011 WL 240124, at \*3 (S.D.N.Y. Jan. 25. 2011) (denying request to re-depose several MDL witnesses where plaintiffs' counsel was unable to identify any specific and new testimony that each witness would testify to). *Cf. In re Ford Motor Co. Crown Victoria Police Interceptor Prods. Liab. Litig.*, No. 1:02 CV 15000, 2003 WL 22331285, at \*2 (N.D. Ohio May 2, 2003) (granting protective order prohibiting plaintiffs' counsel from re-deposing MDL witness where plaintiffs could not identify new information the witness would testify to).

Thus, because there is no indication that re-depositions of the witnesses who were previously deposed in the MDL—some of them multiple times—are necessary to elicit any new (and useful) information not covered in the MDL proceeding, Defendants have shown good cause for a protective order as to these depositions by the particular (and uncontradicted) fact demonstration that they were deposed in the MDL. *See, e.g., In re Fosamax Prods. Liab. Litig.*, 2011 WL 240124, at \*3 ("Despite failing to present any evidence that the Merck employee witnesses' testimony will differ from their prior testimony, the Plaintiffs claim that they never had the opportunity to depose Merck's employees on the Rule 26 expert disclosure

---

[3] The Court also rejects Plaintiff's second argument, as although the depositions in the MDL covered seven different devices, that included the TVT-O device, and the whole point of the MDL is to combine all the devices into one common proceeding and cover all the information at once. Plaintiff's counsel simply must go through the deposition transcripts and find the information relevant to the TVT-O devices.

served in the *Secrest* case[.]") (internal quotation marks and citation omitted). Accordingly, the Court grants the motion as to these ten witnesses.

Ms. Garrison, by contrast, has never been deposed in the MDL or by Plaintiff's counsel. Defendants argue that Ms. Garrison's deposition would nonetheless be disproportional to the needs of the case because she "was ***not*** the sales representative, district manager or regional business director at the time of Plaintiff's implant in 2009" and "was never assigned to the implanting facility in ***any*** *of those* capacities." (Doc. No. 87 at 12) (emphasis in original). However, Ms. Garrison was at least employed at Ethicon until 2018. Plaintiff does not respond to Defendants' argument, but Defendants have nonetheless failed to meet their burden of making a "strong showing" to completely prevent the deposition of Ms. Garrison. *City of Rockford*, 2020 WL 1675593, at *2; *see also Johnson v. Jung*, 242 F.R.D. 481, 483 (N.D. Ill. 2007). Accordingly, the Court denies the motion as to this witness.

As to Mr. Calabrese, although Plaintiff's counsel previously deposed him in a different case, he was not deposed in the MDL. Defendants argue that Plaintiff has not shown that Mr. Calabrese's deposition is necessary. However, Plaintiff has at least represented that Mr. Calabrese was a sales representative for TVT-O devices at the facility where Plaintiff was implanted. Further, a review of the deposition transcript attached to Plaintiff's response shows that in the previous (non-MDL) deposition, Plaintiff's counsel limited the deposition to case-specific questions about the relevant time period in that case of 2003-2006. Thus, Mr. Calabrese's deposition may be needed here to ask questions specific to Plaintiff's case and her relevant

7

time period, and the fact that Mr. Calabrese may not have been personally involved in Plaintiff's implantation does not compel a different conclusion. *See, e.g., Johnson*, 242 F.R.D. at 483 ("The test under Rule 26 is not whether a putative deponent had personal involvement in an event, or even whether she has 'direct' knowledge—which is merely another way of saying that she was a participant in the event[.]"). Accordingly, the Court will not completely prevent Plaintiff from deposing this witness either.

B.     **Rule 30(b)(6) Corporate Witness Deposition**

Plaintiff also seeks to take a Rule 30(b)(6) corporate witness deposition of Ethicon on fourteen topics. As an initial matter, the Court is disappointed that the parties were unable to narrow the list of fourteen topics in any way through their meet-and-confer sessions prior to engaging in motion practice. In particular, the Court is troubled by Defendants' counsel's uncontradicted assertion, confirmed by the parties' meet-and-confer transcript, that Defendants requested that the parties go through the fourteen topics one-by-one and Plaintiff's counsel "refused . . . saying that '[t]he fact that individually named witnesses have testified concerning a subject generally is no obstacle to a 30(b)(6) deposition[] on the same subject."[4] (Doc.

---

[4] As an aside, this statement by Plaintiff's counsel during the meet-and-confer implies that she believes some of the witnesses listed by Defendants as having testified to certain topics in the 30(b)(6) notice were testifying in their individual capacity as opposed to testifying on behalf of the corporation. Defendants refer to the witnesses in their motion as "corporate witnesses" and proceed as if the witnesses testified on behalf of the corporation under Rule 30(b)(6). This distinction may be significant. *See Louisiana Pacific Corp. v. Money Market 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 487 (N.D. Cal. Sept. 10, 2012). Plaintiff does not make this argument, however, and in her response says only that there is no showing as to how "depositions from 2012-2014 (some of which relate to fact depositions) could possibly cover subsequently discovered facts," but she does not state which depositions she believes

No. 87 at 7.) The Court will address each topic individually, but the parties are admonished and reminded of their obligation under Local Rule 37.2 to meet and confer in good faith on the specifics of their discovery disputes before bringing the issues before the Court.

The parties' briefing addresses only one topic specifically, which was not previously explored in the MDL: the number of TVT-O devices manufactured and sold in the United States from the date of launch to the present. Defendants argue that that they gave Plaintiff this information in written discovery responses, and Plaintiff has not shown why deposition testimony is necessary to elaborate on the information. Rule 30 does "not permit a party served with a Rule 30(b)(6) deposition notice . . . 'to elect to supply the answers in a written response to an interrogatory[.]'" *Louisiana Pacific Corp*, 285 F.R.D. at 486. Written responses may suffice, though, if the subject is sufficiently limited in scope and relevance that the burden of deposition testimony outweighs the usefulness of it. *In re Lumber Liquidators Chinese-Manufactured Flooring Products Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 1:15-md-2627(AJT/TRJ), 2018 WL 3934396, at *5 (E.D. Va. Aug. 16, 2018). Here, Plaintiff fails to sufficiently explain why she needs deposition testimony on such a limited, specific topic that she has

---

were fact witness depositions versus 30(b)(6) depositions. (Doc. No. 91 at 12.) Plaintiff also does not contest the accuracy of the list of prior MDL deponents who testified as to the 30(b)(6) topics that Plaintiff requests testimony on, and the most reasonable conclusion is that the list shows the 30(b)(6) witnesses who testified to the topics. In any event, Plaintiff's statements are insufficient to raise the argument, and Plaintiff has waived it. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived[.]").

9

already discovered through written responses and makes no argument as to the relevance or usefulness of the information, which seems dubious at best. Thus, the Court grants the motion as to this topic.

As to the remaining topics, neither Defendants nor Plaintiff mention or specifically address any of them. However, Defendants attach a list of the topics to the motion along with the MDL deposition testimony that covered each topic. Plaintiff does not deny that Defendants' list is accurate and that MDL witnesses testified to each of the proposed topics. Plaintiff argues, though, that new developments have occurred since the MDL that must be explored, including the addition of new warnings to the TVT-O label; the withdrawal of certain pelvic mesh products from the market; "new regulatory actions relative to the TVT-O"; "the release of new testing and literature relative to the TVT-O [and] its complications"; and "the publication of numerous new articles discussing the risks to women of the TVT-O and related products." (Doc. No. 91 at 4.)

Due to the "obvious and substantial burden" of preparing witnesses for a Rule 30(b)(6) deposition, *In re Lumber Liquidators*, 2018 WL 3934396, at *5, to permit the revisiting of a Rule 30(b)(6) deposition in the MDL context the Court must find that testimony on a particular topic will be new and useful and there is thus no "undue" burden on the party preparing the witness(es). *In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig.*, 2018 WL 7683307, at *5-6. The Court agrees with Plaintiff that evidence of some **new** events may be discoverable, but it appears that

10

only topics 2, 3, 6, 8, 12 and 13 may reveal relevant information that could not have been covered in the MDL depositions. Those topics are as follows:

> **Topic 2**: [Defendants'] lobbying activities within the United States regarding vaginal mesh products, by and through Political Action Committees "PACs" or otherwise regarding vaginal mesh products used to treat stress urinary incontinence or pelvic organ prolapse from the date of the TVT-O's launch to the present. This includes before and after the April 16, 2019 FDA order that manufacturers of surgical mesh products intended for transvaginal repair of anterior compartment prolapse to stop selling and distributing their products immediately.
>
> **Topic 3**: The midurethral task force formed in conjunction with medical societies such as AUGS to defend the mesh slings, including efforts to develop position statements supporting the use of the mesh slings on behalf of medical societies for use at legal proceedings. This includes position statements with "gold standard" language.
>
> **Topic 6**: [Defendants'] public relations operations, campaigns, marketing strategies and the like regarding vaginal mesh products including the TVT-O in response to legal proceedings.
>
> **Topic 8**: Each version of the TVT-O IFU from the launch of the product *until the present*, including and [sic] changes to the Adverse Reactions section or the Warnings and Precautions section made over time.
>
> **Topic 12**: [Defendants] sponsored medical studies or literature for vaginal mesh products including the TVT-O.
>
> **Topic 13**: Literature, studies, [and] internal documents that relate to the design of the TVT[-]O mesh, including without limitation the obturator approach and mechanical and laser cut mesh, IFUs and changes to IFUs over time.

(Doc. No. 87-10 at 3-4.) These topics appear to relate to information that may require "updating," i.e., relevant events have occurred since the MDL. The topics only reveal new information, however, to the extent the questions concern events occurring after the date of the most recent deposition testimony covering the topic. Thus, Plaintiff

may explore topic 2 as it pertains to events occurring after August 23, 2013, topics 3 and 6 for events occurring after January 13, 2014, topic 8 for events occurring after November 12, 2015, topic 12 for events occurring after November 7, 2013, and topic 13 for events occurring after January 15, 2014.

However, Plaintiff has not shown how the following topics would reveal new, relevant information not sufficiently covered in the MDL:[5]

> **Topic 4**: Payments to the 2014 AUGS/SUFU position statement Authors Charles Nager, Paul Tulikangas, Dennis Miller, Eric Rovner and Howard Goldman.
>
> **Reasoning**: Plaintiff gives no information as to the dates of these payments and they apparently happened in 2014. Martina Scheich gave testimony on September 25, 2014 regarding the payments.
>
> **Topic 5**: [Defendants'] "surround-sound" approach used to create a market for their vaginal mesh products including the subject TVT-O.
>
> **Reasoning**: Three different witnesses testified to this general topic about Defendants' marketing approach in the MDL and Plaintiff gives no information about how revisiting it would reveal new and useful material that occurred after the final deposition.
>
> **Topic 7**: The reasons for the development and launch of the TVT Abbrevo product.
>
> **Reasoning**: Neither party states when this product was launched, but it was at issue in the MDL so the launch and all relevant events surrounding it must have occurred at least prior to the MDL.

---

[5] The Court also rejects Plaintiff's argument that she should be able to "destroy" MDL deposition testimony about past events and statements by confronting witnesses with later developments that she says contradicts that testimony. First, Plaintiff states that"[t]hese witnesses denied certain facts and information that is now known," but does not explain what facts they denied and what information "is now known." (Doc. No. 91 at 2.) Also, even if some of the witness statements were contradicted, Plaintiff is free to introduce admissible evidence at trial that contradicts prior representations by Defendants. *See In re Lumber Liquidators*, 2018 WL 3934396, at *4.

**Topic 9**: The properties of the subject TVT-O Prolene mesh, including pore size, weight, elasticity, stiffness, flexural rigidity, biomechanical properties, toxicity, including as compared to (1) [Defendants'] heavyweight Prolene hernia mesh and (2) the materials of other vaginal mesh products by other manufacturers. This includes the the [sic] physiologic performance of the mesh.

**Reasoning**: This is general information about the TVT-O design that was covered extensively in the MDL—by four witnesses during twelve days of deposition testimony—and Plaintiff gives no indication that new information would be revealed by a re-deposition.

**Topic 10**: [Defendants'] copy approval of nationwide marketing materials on a national level. This includes copy approvals by company medical, regulatory and legal management prior to dissemination, and the online centralized platform called **Literature Depot**.

**Reasoning**: Plaintiff has again not given any specifics about why this general marketing information would useful and has not shown that Defendants' nationwide marketing materials have changed in any material respect since the last deposition on this topic.

**Topic 11**: The June 2, 2006 company meeting regarding "Meshes for Pelvic Floor Repair" where "Unmet clinical needs" were discussed and where the company memorialized the company's understanding of the current dangers of their mesh devices and the ways the materials need to be improved in order to avoid serious complications.

**Reasoning**: This meeting occurred in 2006 and there is no indication as to how re-depositions in 2020 or 2021 would shed more light on it than the 2012 deposition that already covered the topic.

**Topic 14**: [Defendants'] testing of the TVT-O prior to both the launch of the product and Plaintiff's 2009 implant.

**Reasoning**: Again, this topic covers general information about the TVT-O from over a decade ago, which was explored in the MDL by many different witnesses, and it does not request information on events that occurred after the MDL witnesses testified.

(Doc. No. 87-10 at 3-4.) For the reasons set forth above, the Court finds that

Defendants have shown good cause for a protective order and have made particular

and specific demonstrations of fact that these topics were all already exhaustively covered in the MDL. Plaintiff also has offered no specifics regarding what new information would be covered and how it would be relevant and useful, the Court finds the usefulness of this information is heavily outweighed by the "obvious and substantial burden" of preparing witnesses for a Rule 30(b)(6) deposition on the additional topics, and Defendants have shown the "undue burden" required by Rule 26(c). *In re Lumber Liquidators*, 2018 WL 3934396, at *5.[6] The Court grants the motion as to topics 4, 5, 7, 9, 10, 11, and 14.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Protective Order [Doc. No. 87] is granted in part and denied in part, as set forth above.[7]

**SO ORDERED.**        **ENTERED:**

**DATE:**    **October 22, 2020**        _____
                                                          **HON. MARIA VALDEZ**
                                                           **United States Magistrate Judge**

---

[6] Plaintiff also ignores that many of the individuals who were most knowledgeable about events occurring prior to the formation of the MDL are no longer employed by Defendants, and the information the MDL witnesses gave in 2012-2014 is likely more valuable than information witnesses would give now.

[7] The Court denies Plaintiff's remaining requests, including her request to compel Defendants to produce witnesses within 75 days and "confirm which witnesses they are representing in this cause" and produce their contact information. (Doc. 91 at 14.) In light of this Order, the parties are directed to **meaningfully** meet and confer as to the timing of depositions and contact information of witnesses. In their written status report to be filed by November 6, 2020, the parties are to either set forth their agreement as to the timing of depositions or set forth their respective positions, if they are unable to agree.